UNITED STATES of America,
Plaintiff–Appellee,

v.

Rahim Abdulla BERRY, Barbara
Mitchell, and Carolyn Jemison,
Defendants–Appellants.

Nos. 01–1726, 01–1727, 01–1762.

United States Court of Appeals,
Sixth Circuit.

Nov. 1, 2002.

Before KEITH, KENNEDY, and
MOORE, Circuit Judges.

## ORDER

These are three consolidated appeals
taken from individual judgment and com-
mitment orders in a multiple-defendant
criminal prosecution. The parties have
briefed the issues through counsel and
have agreed to waive oral argument.
Upon examination, this panel unanimously
agrees that oral argument is not needed.
Fed. R.App. P. 34(a).

In April 2000, a federal grand jury in-
dicted fourteen individual defendants for
their part in a large-scale conspiracy to
defraud credit card companies. Three of
the named defendants, Rahim Abdulla
Berry, Barbara Mitchell, and Carolyn Je-
mison, elected to plead guilty and the dis-
trict court accepted their pleas. The court
found Berry guilty of conspiracy (18
U.S.C. § 371), identity theft and aiding
and abetting (18 U.S.C. §§ 1028 & 2),
credit card fraud and aiding and abetting
(18 U.S.C. §§ 1029 & 2), band fraud and
aiding and abetting (18 U.S.C. §§ 1344 &

2), and wire fraud and aiding and abetting (18 U.S.C. §§ 1343 & 2). The court found Mitchell guilty of conspiracy (18 U.S.C. § 371). The court found Jemison guilty of conspiracy (18 U.S.C. § 371), and credit card fraud and aiding and abetting (18 U.S.C. §§ 1029 & 2). The individual sentences will be set forth in assigning a leadership enhancement. USSG § 3B1.1, comment. (n.4). A de novo review of the conspiracy and Berry's documented and admitted role in the offense supports the district court's decision. This appeal lacks merit.

### Case No. 01–1727

This appeal has been taken by Barbara Mitchell and presents a challenge to the district court's decision to impose upon Mitchell a restitution obligation and to the constitutionality of Mitchell's plea in light of the allegedly unexpected restitution order. A cursory examination of the record and law reveals the meritless nature of these two claims.

Mitchell is the only one of the three defendants in these consolidated appeals who entered into a formal plea agreement with the United States. Mitchell agreed to plead guilty to Count 1 of the indictment, the overarching conspiracy, and committed to a de-briefing with law enforcement authorities. In exchange, the parties agreed on certain sentencing considerations, including a sentencing cap of twenty-seven months, and left open the possibility of downward adjustments or departures in recognition of Mitchell's cooperation and acceptance of responsibility. The agreement explicitly contemplated Mitchell's exposure to a sizable restitution obligation, of up to $1.5 million.

The parties reviewed the terms of the plea agreement at the plea colloquy. Mitchell later acknowledged the district court's repeated explanations to her of the concept and amount of the agreed-upon restitution order and the nuances of the attendant joint and several liability. In addition, the district court faithfully and exhaustively complied with its duty under Criminal Rule 11 to insure that Mitchell entered a knowing, voluntary plea. Mitchell failed to register any objections to the pre-sentence report. The district court subsequently sentenced Mitchell to the judgment of record that included an order of restitution for which she was jointly and severally liable in the amount of $1.5 million.

On appeal, counsel for Mitchell raises two issues. First, counsel contends that the district court erred in failing to consider Mitchell's financial situation prior to imposing the restitution order. In addition, counsel argues that Mitchell's plea was involuntary because she was unaware of the exact amount of the restitution order to be imposed.

■ The first claim has no basis in law. This court reviews the propriety of a restitution order de novo and the amount of restitution ordered for abuse of discretion. *United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir.2000). Counsel for the United States properly notes that an argument directed to the defendant's ability to satisfy a restitution order is based in law that was superseded in 1996 by the current versions of the applicable statutes. In April 1996, Congress passed the Antiterrorism and Death Penalty Act of 1996 which, in part, included the Mandatory Victims Restitution Act ("MVRA"). The MVRA added Section 3663A to Title 18, requiring mandatory restitution to victims of certain crimes, including offenses against property under Title 18 and including any offense committed by fraud or deceit. For these specified offenses under 18 U.S.C. § 3663A, a district court "shall order" full restitution, which must be im-

posed "without consideration of the economic circumstances of the defendant." 18 U.S.C. §§ 3663A(a)(1) and 3664(f)(1)(A); *United States v. Schulte*, 264 F.3d 656, 661 (6th Cir.2001). Thus, Mitchell was not entitled to put her financial situation in issue in this context.

■ The second appellate claim is specious. A cursory review of the plea agreement and the colloquy transcript shows that the district court judge bent over backwards to explain to Mitchell the amount and concept of the restitution order to be imposed and that the court thereafter faithfully imposed the award as described. For counsel to argue otherwise borders on the frivolous. This appeal lacks merit.

## Case No. 01–1762

This appeal was taken by Carolyn Jemison. Counsel for Jemison raises two issues for appellate review, both of them presenting challenges to the concept of holding Jemison responsible for the total amount of loss attributable to the conspiracy. Jemison has filed a pro se brief with this court in which she argues that her conviction was the product of ineffective assistance of counsel. An examination of the record and law shows that the issues raised by counsel lack merit and that Jemison's ineffective counsel claim is not ripe for consideration by this court.

Jemison agreed to plead guilty "straight up" to the overarching conspiracy charge, Count 1, and she also agreed to plead to three other individual counts of credit card fraud and aiding and abetting, after rejecting a plea bargain that would have required her to submit to a de-briefing by the United States. The district court conducted a plea colloquy with Jemison and engaged her in a general discussion of the aims and operation of the conspiracy. Jemison acknowledged during this exchange that she knowingly agreed to take "some friends" to places to commit crimes. The court also informed Jemison that one of the elements to which she was exposing herself by her plea was the shared responsibility for the economic loss caused by the conspiracy that could amount to $1.5 million. The district court accepted the plea and set the matter over pending completion of a pre-sentence report.

The probation officer responsible for preparation of the pre-sentence report concluded that the amount of loss attributable to the conspiracy was $1.5 million. The pre-sentence report thus contains a recommendation that Jemison's base offense level should be increased by twelve levels pursuant to USSG § 2F1.1(b)(1)(M) (deleted by consolidation with USSG § 2B1.1 effective November 1, 2001) in recognition of the loss by the victims of the conspiracy of more than $1.5 million. The report also contained the recommendation that Jemison "may" be assessed a restitution order in the amount of $1.5 million. Counsel for Jemison filed objections to the report, specifically noting that the twelve-level increase in Jemison's base offense level pursuant to § 2F1.1(b)(1)(M) should be adjusted.

The district court entertained Jemison's objections at sentencing. Counsel did not deny that the loss attributable to the conspiracy as a whole was $1.5 million. She did argue, however, that Jemison's base offense level should only have been increased by a level commensurate with Jemison's own "hands on" actions that amounted to a $67,000 loss as Jemison assumed a much smaller role in the conspiracy than the other defendants. The district court summarily rejected her arguments. The district court proceeded to sentence Jemison to the judgment of record, a judgment that includes a restitution

order making her liable jointly and severally for $1.5 million.

Counsel for Jemison raises two appellate issues. First, counsel argues that the district court committed reversible error in attributing the entire economic loss caused by the conspiracy to Jemison for purposes of calculating her base offense level.

The Sixth Circuit has specifically held that challenges to the interpretation of the term "loss" under the now-deleted § 2F1.1 of the guidelines are subject to de novo review. *United States v. Wolfe,* 71 F.3d 611, 616 (6th Cir.1995). Former section 2F1.1 set the base offense level for many crimes involving elements of fraud and deceit and provided for increased base offense levels according to the amount of loss. Application Note 9 of section 2F1.1 informed that the "loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." In addition, Application Note 9 specifically counsels that relying only on the offender's gain to make this determination "ordinarily will underestimate the loss."

A de novo review of the § 2F1.1(b)(1)(M) enhancement supports the district court's decision. Jemison never disputed that the total loss caused by the conspiracy was $1.5 million, and she pleaded to the indictment without benefit of any plea bargain that might have limited her sentencing exposure in this regard. A cursory examination of the relevant wiretap logs, logs that are of record, shows that Jemison's account of her limited, reluctant role in the conspiracy is subject to legitimate doubt. This is a textbook example of a sentencing inequity described in Application Note 9; focusing only on the actual gain to Jemison severely underestimates the total loss caused by the conspiracy to which she pleaded guilty. This claim lacks merit.

Counsel for Jemison raises a second issue, that the district court erred in imposing upon Jemison the $1.5 million order or restitution without regard for her ability to satisfy the order. This claim must be rejected for the reasons set forth in the treatment of the virtually identical appellate argument raised by co-defendant Mitchell in consolidated appeal No. 01–1727.

Finally, Jemison filed a pro se appellate brief in which she challenges her conviction on the grounds of ineffective assistance of trial counsel. The support for this claim consists mainly of facts and conversations not of record in the present appeal and, therefore, not ripe for appellate review. "As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations." *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir.1990). The proper avenue for Jemison to pursue her claim, should she wish to do so, is a motion to vacate sentence filed under 28 U.S.C. § 2255 following the completion of direct review of her conviction. This appeal lacks merit.

Accordingly, the district court's judgments are affirmed.