NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0454n.06
Filed: August 1, 2008

No. 04-4468

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee Cross-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| GARY T. HOHN, | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| Defendant-Appellant Cross-Appellee. | ) | |
| | ) | |
| | ) | |

Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.** This case is part of a consolidated appeal involving thirteen defendants who were members of the Outlaw Motorcycle Club ("OMC"), an international motorcycle club with chapters across the country and around the world. In 1997, the Federal Bureau of Investigation and state law enforcement agencies began an investigation into the Green region of the OMC, which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. As a result of the investigation, a grand jury in the Northern District of Ohio returned a 40-count indictment in 2003 charging the defendants with various federal offenses, including Racketeer Influenced and Corrupt Organizations Act ("RICO"), drug trafficking, and firearms offenses. The defendants were tried together before an anonymous jury.

Defendant Gary T. Hohn was a member and former president of the OMC's Dayton chapter. Following trial, Hohn was convicted on one count of substantive RICO, in violation of 18 U.S.C. § 1962(c), one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d), one count of conspiracy to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846, one count of conspiracy to use or carry a firearm during and in relation to a drug trafficking crime or crime of violence, in violation of 18 U.S.C. § 924(o), one count of possessing with intent to distribute LSD, in violation of 21 U.S.C. § 841(a), and one count of attempted collection of extensions of credit by extortion, in violation of 18 U.S.C. § 894. On November 3, 2004, Hohn was sentenced to 121 months' imprisonment on the RICO, drug trafficking conspiracy, possession with intent to distribute, and extortion counts, and 60 months' imprisonment on the firearms conspiracy count, to run consecutively.

Hohn presents three challenges to his conviction: (1) that he was indicted in violation of the statute of limitations set out in 18 U.S.C. § 3282; (2) that the evidence was insufficient to convict him on all counts; and (3) that the district court committed reversible error in admitting evidence of crimes unrelated to the charges against him. These contentions lack merit. Additionally, both Hohn and the government appeal Hohn's sentence. The district court erred in applying the sentencing guidelines as mandatory and in applying the mandatory and consecutive sentencing provisions of 18

U.S.C. § 924(c).[1]  Remand to address these sentencing errors obviates the need for us to address the government's cross-appeal.

## I.

As an initial matter, Hohn's indictment did not violate the statute of limitations set out in 18 U.S.C. § 3282.  Although Hohn claims to have raised this issue in the district court, the record indicates otherwise.  Accordingly, plain error review applies to Hohn's statute of limitations claim. "To establish plain error, a defendant must show (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Schulte*, 264 F.3d 656, 660 (6th Cir. 2001).  Review of the record indicates that no error, plain or otherwise, occurred with respect to the statute of limitations.

Because the indictment in this case was returned on April 8, 2003, the relevant question is whether the charges against Hohn were based upon conduct that occurred on or after April 8, 1998.[2]

---

[1]Hohn also incorporated various arguments made by his co-defendants.  Some of those arguments cannot coherently be applied to Hohn's case.  And to the extent that the arguments can coherently be applied to Hohn's case, the arguments are unavailing for the reasons stated in *United States v. Garland*, No. 04-4474, __ WL __ (6th Cir. 2008); *United States v. Lawson*, No. 04-4480, __ F.3d __ (6th Cir. 2008); *United States v. Puttick*, No. 05-3408, __ WL __ (6th Cir. 2008); and *United States v. Walker*, No. 04-4478, __ WL __ (6th Cir. 2008).

[2]Hohn erroneously claims in his brief that he was indicted on February 4, 2004.  The indictment is clearly dated April 8, 2003.

With respect to the substantive RICO count, the statute of limitations is satisfied if Hohn "committed at least one predicate act within the five-year limitations period." *United States v. Saadey*, 393 F.3d 669, 677 (6th Cir. 2005). The jury found that Hohn committed Racketeering Acts 1(A), 2, 19(A), and 19(B). Racketeering Act 1(A) was alleged to have occurred from 1990 through the date of the indictment, April 8, 2003. That racketeering act incorporated by reference the indictment's drug conspiracy count, which alleged over 200 acts occurring after April 8, 1998. Further, Racketeering Act 2 alleged that Hohn engaged in the distribution of drugs on June 20, 1998. This conduct clearly occurred after the relevant limitations date. Because the record establishes that Hohn committed these predicate acts within the statute of limitations period set out in 18 U.S.C. § 3282, Hohn's indictment for the substantive RICO offense was proper.

With respect to the RICO conspiracy and drug trafficking conspiracy counts, the statute of limitations is satisfied if the government "alleges and proves that the conspiracy continued into the limitations period." *United States v. Harriston*, 329 F.3d 779, 783 (11th Cir. 2003). "A conspiracy is deemed to have continued as long as the purposes of the conspiracy have neither been abandoned nor accomplished and the defendant has not made an affirmative showing that the conspiracy has terminated." *Id.* Continuing participation can be rebutted with evidence that the defendant "affirmatively withdrew from the conspiracy or that the final act in furtherance of the conspiracy has occurred." *Id.* It is clear from the record and indictment that the RICO and drug trafficking conspiracies alleged and proved by the government continued well past April 8, 1998. As there is no evidence, and Hohn does not argue on appeal, that Hohn withdrew from the conspiracy prior to

April 8, 1998, the prosecution of Hohn for RICO conspiracy and drug trafficking conspiracy was proper.

Finally, with respect to the remaining counts (firearms conspiracy, possession with intent to distribute, and extortion), the government alleged in the indictment conduct that occurred after April 8, 1998 with respect to all three counts. Hohn's statute of limitations claim is therefore without merit.

## II.

Hohn's second argument—that the evidence adduced at trial was insufficient to convict him on all counts—is also without merit. This court reviews de novo the sufficiency of the evidence to sustain a conviction. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990). Evidence is sufficient to sustain a conviction if "after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony*, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 589 (6th Cir. 1999) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In examining claims of insufficient evidence, this court does not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* at 588-89.

The record contains common evidentiary support for the RICO counts, the narcotics conspiracy count, the narcotics distribution count, and the extortionate credit transactions count.

This is so because, in support of the substantive RICO count, the jury found that Hohn committed Racketeering Acts 1(A), 2, 19(A), and 19(B). Racketeering Act 1(A) incorporated the narcotics conspiracy count, and Racketeering Act 2 charged Hohn with possession with intent to distribute 100 unit doses of LSD, incorporating the possession with intent to distribute count. Further, Racketeering Acts 19(A) and 19(B) charged Hohn with extortionate credit transactions, and these racketeering acts involved conduct similar to that charged of Hohn in the extortionate credit transactions count.

For purposes of the narcotics conspiracy count and Racketeering Act 1(A), the government introduced considerable evidence to allow a rational trier of fact to conclude beyond a reasonable doubt that Hohn engaged in a prolonged narcotics conspiracy. The government also introduced evidence sufficient to convict Hohn of possession with intent to distribute 100 unit doses of LSD (Racketeering Act 2/possession with intent to distribute count).

To prove a narcotics conspiracy under 21 U.S.C. § 846, "the government must prove, beyond a reasonable doubt, '(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy.'" *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999) (quoting *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996)). "Proof of a formal agreement is not required to establish a conspiracy; 'a tacit or material understanding among the parties' is sufficient." *United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004) (quoting *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990)). To establish possession with intent to distribute narcotics under 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt that

Hohn (1) knowingly, (2) possessed a controlled substance, (3) with intent to distribute it. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995).[3]

At trial, Tracy Tipton testified that she lived with Hohn from the late 1980s or early1990s until March 1998 and that Hohn was affiliated with the OMC during that time. Tipton testified that Hohn sold marijuana during the time that she resided with him. Tipton also testified that Hohn dealt in cocaine and estimated that he distributed at least 20 kilograms of cocaine over a two year period while the couple lived on Parsons Avenue in Dayton, Ohio. Tipton stated that Patrick Puttick, another OMC member, was Hohn's cocaine supplier and that Hohn obtained three to six kilograms of cocaine per month from Puttick. James Dilts, a probationary member of the OMC, further testified that Hohn provided him with six to seven ounces of cocaine to sell in order for Dilts to meet his OMC obligations. Testimony at trial also established that on June 20, 1998, Dilts, under FBI supervision, made a controlled purchase of 100 unit doses of LSD from Hohn. During the transaction, Hohn stated "[w]e sold 50,000 of these . . . in a couple two days."

---

[3]In his brief, Hohn also asserts that 21 U.S.C. § 841(a)(1), (b)(1)(A) and 21 U.S.C. § 846 are unconstitutional as applied to him because there is no evidence that the marijuana, cocaine, or LSD allegedly sold by him had any effect on interstate commerce. This argument is without merit. *See United States v. Tucker*, 90 F.3d 1135, 1140-41 (6th Cir. 1996); *United States v. Collier*, 246 F. App'x 321, 336-38 (6th Cir. 2007) (addressing Commerce Clause attack on 21 U.S.C. § 841(a)(1) and noting that section 841(a)(1) "addresses a clearly commercial activity that has long been within federal power to regulate" (quoting *Tucker*, 90 F.3d at 1140)); *United States v. Genao*, 79 F.3d 1333, 1336 (2d Cir. 1996) (holding that section 846 does not violate the Commerce Clause and noting that "[b]ecause narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce, the actual effect that each drug conspiracy has on interstate commerce is constitutionally irrelevant.").

The testimony of Tipton and Dilts was sufficient to convict Hohn of Racketeering Acts 1(A) and 2, the narcotics conspiracy count, and the possession with intent to distribute count. This testimony establishes that Hohn knowingly entered into at least a tacit agreement with other members of the OMC to violate the drug laws and that Hohn was a participant in the conspiracy. The testimony also establishes that Hohn knowingly possessed a controlled substance, 100 unit doses of LSD, with intent to distribute it. While much of Hohn's argument against the sufficiency of the evidence for these charges asks this court to weigh the credibility of the witnesses against him, credibility determinations are the province of the jury.

The evidence was also sufficient to convict Hohn on the extortionate credit transactions count and Racketeering Acts 19(A) and 19(B). In order to convict a defendant under 18 U.S.C. § 894(a)(1), the government must prove that: (1) there was principal or interest outstanding on an extension of credit; (2) the defendant actually collected or attempted to collect sums due; and (3) the defendant employed extortionate means to collect the same. *United States v. Chen*, 378 F.3d 151, 160 (2d Cir. 2004). The term "extortionate means" is defined in 18 U.S.C. § 891(7) as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person."

The evidence elicited at trial established that on February 20, 1998, Hohn and other OMC members traveled to James Dilts's residence to collect money that Dilts owed Hohn. Dilts testified that Hohn had been supplying him with cocaine that Dilts was supposed to sell to pay his dues to the OMC. Dilts testified that Hohn would supply him with cocaine, which Dilts would sell and pay

Hohn $1,500 per week from the sales, and that Dilts quickly fell behind in payments to Hohn. Sheila Dilts, James Dilts's wife, testified that on February 20, 1998, OMC associate James Reichelderfer confronted her at the Dilts's home while Hohn waited outside in a van. Reichelderfer, who was armed with a pistol around his waist, told Sheila Dilts that he was there to collect Hohn's debt and threatened to sexually assault Sheila and to shoot out James Dilts's kneecaps. Reichelderfer also told Sheila that James Dilts had better have the money owed to Hohn when Reichelderfer returned. When Reichelderfer and Hohn returned to the Dilts's home later that day, James Dilts paid Reichelderfer $500. Additionally, testimony elicited at trial established that in July 1998, Hohn telephoned Sheila Dilts's workplace and told her that he wanted her to go to Detroit with him. Hohn told Sheila that he would kill her if she told her husband about the phone call. Sheila Dilts testified that Hohn had repeatedly contacted her for sex to pay off the debt her husband owed to Hohn.

The testimony of James and Sheila Dilts was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Dilts owed money to Hohn, and that Hohn attempted to collect and collected on that debt through extortionate means on several occasions. The evidence was therefore sufficient to convict Hohn of the extortionate credit transactions count and Racketeering Acts 19(A) and 19(B).

It follows from the above that the evidence was sufficient to convict Hohn of the substantive RICO count. As discussed, the evidence was sufficient for a jury to find that Hohn committed two or more predicate acts charged in the indictment—namely, Racketeering Acts 1(A), 2, 19(A), and 19(B). Nevertheless, Hohn contends that the "continuity plus relationship" standard of *H.J. Inc. v.*

*Northwestern Bell Telephone Co.*, 492 U.S. 229 (1989), is not satisfied with respect to those predicate acts. Under that standard, "the government must establish not only that at least two predicate acts occurred, but also a 'relationship between the predicates' and the 'threat of continuing activity[.]'" *United States v. Blandford*, 33 F.3d 685, 703 (6th Cir. 1994) (quoting *H.J. Inc.*, 492 U.S. at 239). "'It is this factor of *continuity plus relationship* which combines to produce a pattern.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 239).

Hohn's contention that the government did not establish continuity is belied by the record. "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. "A closed period of continuity may be demonstrated 'by proving a series of related predicates extending over a substantial period of time.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 724 (6th Cir. 2006) (quoting *H.J. Inc.*, 492 U.S. at 242). Continuity is established in this case by evidence of the ongoing nature of the narcotics trafficking and extortionate activities that Hohn engaged in, and by the substantial period of time over which Hohn's past activities occurred. The predicate acts that Hohn was charged with span almost 10 years (1990-1998). Further, these predicate acts, by their nature, "involve a distinct threat of long-term racketeering activity." *See Vild v. Visconsi*, 956 F.2d 560, 569 (6th Cir. 1992) (quoting *H.J. Inc.*, 492 U.S. at 242). Evidence at trial indicated that trafficking in drugs and engaging in extortion were integral parts of the OMC enterprise, and that proceeds from drug activity were used to fulfill financial obligations to the OMC. Because continued operation of the OMC enterprise relied in part

on money obtained through drug trafficking, Hohn's activities involved a distinct threat of long-term racketeering activity. As the Supreme Court stated in *H.J. Inc.*, 492 U.S. at 243, "[t]he continuity requirement is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing and legitimate RICO 'enterprise.'"

Hohn's contention that the predicates were not sufficiently related similarly lacks merit. This court has held that the "relationship or relatedness" requirement can be established through proof that either: "(1) the defendant was enabled to commit the offense solely by virtue of his position in the enterprise; or (2) the offense was related to the activities of the enterprise." *United States v. Corrado*, 227 F.3d 543, 554 (6th Cir. 2000) (quoting *United States v. Locascio*, 6 F.3d 924, 943 (2d Cir. 1993)). The record indicates that the predicate acts for which Hohn was charged were related to the activities of the enterprise charged in the indictment. The record is replete with evidence that members of the OMC sold drugs, at least in part, to fulfill financial obligations to the OMC. And the record also indicates that Hohn's extortionate activities were tied directly to his involvement in the drug trade. Consequently, evidence at trial was sufficient to establish that the predicate acts charged of Hohn were related to the RICO enterprise charged in the indictment.

With respect to the RICO conspiracy count, the evidence adduced at trial indicates that Hohn was also properly convicted of that count. In analyzing the sufficiency of the evidence for a RICO conspiracy conviction, this court

must first determine if a conspiracy existed and then whether the defendant was a member of that conspiracy. Defendants' agreement to participate in the RICO conspiracy may be inferred from their acts. Thus, for the RICO conspiracy counts, the government need not prove that each defendant personally committed two racketeering violations or overt acts in furtherance of the conspiracy.

*United States v. Hughes*, 895 F.2d 1135, 1141 (6th Cir. 1990) (citations omitted). The record indicates that the government introduced evidence sufficient for a rational trier of fact to find beyond a reasonable doubt that Hohn participated in a conspiracy to violate the RICO statute. Based on the evidence detailed above, a rational trier of fact could reasonably conclude that Hohn agreed to participate in the affairs of the OMC through a pattern of racketeering activity. Hohn's agreement can be inferred through his actions. Testimony at trial established that Hohn dealt in large quantities of narcotics and received those narcotics from OMC member Puttick. The testimony also established that Hohn distributed narcotics to various individuals, including other OMC members. The record contains evidence that drug dealing was regularly employed by OMC members to pay the dues of the organization, and evidence at trial proved that Hohn employed extortionate tactics to settle debts generated by his drug activity. Thus, ample evidence exists from which the jury could infer that Hohn agreed with other members of the OMC enterprise to violate the RICO statute. *Cf. United States v. Starrett*, 55 F.3d 1525, 1549 (11th Cir. 1995) (holding that because evidence was sufficient to support defendants' substantive RICO convictions, and because the jury could infer from the evidence that defendants each agreed to participate in the affairs of the RICO enterprise through a pattern of racketeering activity, the evidence was sufficient to support defendants' convictions for RICO conspiracy).

Finally, the evidence was also sufficient to convict Hohn of conspiracy to carry or use firearms during and in relation to drug trafficking or a crime of violence. At trial, Hohn's ex-girlfriend Tipton testified that Hohn often carried a .380 handgun on his wheelchair and kept other firearms at their residence. Tipton testified that Hohn kept these weapons to safeguard their home, persons, drugs, and money. This testimony is confirmed by evidence that authorities executed a search warrant at Hohn's home on March 1, 2001, where a .380 semiautomatic pistol was found on Hohn's wheelchair. Evidence elicited at trial also indicated that Hohn's co-conspirator, Jamie Reichelderfer, carried a gun around his waist when he confronted Sheila Dilts about James Dilts's drug debt to Hohn. When coupled with other evidence indicating that Hohn engaged in drug trafficking and extortion, this evidence was sufficient to support a finding that Hohn conspired with other members of the OMC enterprise to carry or use firearms during and in relation to drug trafficking or crimes of violence.

For the reasons stated above, the evidence adduced at trial was sufficient to convict Hohn on all counts.

## III.

Moreover, the record establishes that the district court committed no error in admitting at trial evidence of a shooting that occurred at Spanky's Dollhouse in Dayton, Ohio. The Spanky's incident was charged against Hohn's co-defendants Allen Lawson and Glen Carlisle as Racketeering Act 25. The incident involved the shooting of Eric Coulter after a fight broke out between members of the

OMC and a group of patrons at Spanky's. Hohn was not implicated in the evidence introduced at trial. Nonetheless, Hohn contends that this evidence was improperly admitted as Rule 404(b) "other acts" evidence. In the alternative, Hohn argues that the evidence was unduly prejudicial. These arguments are without merit.

Because Hohn was not implicated in the Spanky's incident, it is not clear from the record whether the evidence was actually introduced against Hohn at trial. But even assuming that it was so introduced, the evidence did not implicate Rule 404(b). As this court has previously noted, "Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity." *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995). Indeed, "[b]ad acts by other participants in a common scheme are admissible 'as long as they constitute part of the same criminal episode, whether or not a conspiracy is charged, and as long as independent evidence ties the defendant to that scheme.'" *United States v. Arbelaez-Agudelo*, 19 F. App'x 203, 207 (6th Cir. 2001) (quoting *United States v. Toney*, 161 F.3d 404, 413-14 (6th Cir. 1998)). The record in this case establishes that the conduct of Hohn's OMC co-conspirators at Spanky's was a part of the overall criminal scheme charged by the government in the indictment. That is, it was an act of violence that served to further the OMC's reputation and power as a "fearsome group." *Cf. United States v. Guzman*, 7 F. App'x 45, 52 (2d Cir. 2001); *United States v. Crockett*, 979 F.2d 1204, 1213-14 (7th Cir. 1992). Because, as discussed, there is ample independent evidence in the record tying Hohn to that scheme, the evidence of the Spanky's incident does not implicate Rule 404(b).

Further, the evidence was not unduly prejudicial. The Spanky's incident was directly relevant to and probative of a racketeering act charged in the indictment. It was also relevant to and probative of the overall criminal scheme employed by members of the OMC enterprise. Because this probative value was not substantially outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Fed. R. Evid. 403, admission of the evidence was proper.

**IV.**

Hohn's final argument pertains to his sentence. Hohn argues, and the government concedes, that the district court committed plain error under *United States v. Booker*, 543 U.S. 220 (2005), by applying the sentencing guidelines as mandatory. Hohn's sentencing took place before the Supreme Court issued the *Booker* decision. A review of the record indicates that the district court applied an aggravating-role enhancement based on judge-found facts under the then-mandatory guidelines regime, and that the district court failed to impose an identical, alternative sentence "under a regime in which Guidelines enhancements are not mandatory." *See United States v. Christopher*, 415 F.3d 590, 593 (6th Cir. 2005). Because this court has held that sentences imposed based on judicial fact-finding under the mandatory guidelines regime satisfy the plain-error test, *United States v. Davidson*, 409 F.3d 304, 309 (6th Cir. 2005), we vacate and remand Hohn's sentence.

Although not an issue raised by Hohn on appeal, the district court also erred in imposing a mandatory and consecutive sentence for Hohn's firearms conspiracy conviction. Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Thus, "this Court has discretion to correct plain errors affecting important rights of criminal defendants, even when not raised on appeal." *United States v. Graham*, 275 F.3d 490, 521 (6th Cir. 2001). Count 4 of the indictment charged Hohn with participating in a firearms conspiracy in violation of 18 U.S.C. § 924(o). For that conviction, Hohn was sentenced to a consecutive term of 60 months' imprisonment. That consecutive sentence was the product of the presentence report's application of the mandatory minimum provided for in 18 U.S.C. § 924(c)(1)(A)(i), and the mandatory consecutive sentence provision found in § 924(c)(1)(D)(ii). Unlike § 924(c), however, § 924(o) by its terms does not require a consecutive sentence and, similarly, § 924(c)'s mandatory minimums do not textually apply to violations of § 924(o). *See United States v. Stubbs*, 279 F.3d 402, 409 (6th Cir. 2002) ("[T]hese two statutory provisions call for significantly different statutory penalties . . . ."), *abrogated on other grounds as recognized in United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *see also id.* at 413 (dissenting op.) (minimum and consecutive requirements of § 924(c) "not mandated by the terms of [§ 924(o)]");[4] *Jackson v. United States*, No. Civ. 1:01-CV-112, Crim. 1:99CR74, Crim.

---

[4]The issue that divided our court in *Stubbs* was whether § 924(c)'s mandatory and consecutive provisions applied indirectly to a violation of § 924(o) through a cross-referencing provision in U.S.S.G. § 2K2.1. *Stubbs*, 279 F.3d at 407-10, 413-19. In this case, however, there is no indication in the record or in the presentence report that the district court arrived at the mandatory and consecutive sentence it imposed using the sentencing guidelines. We therefore decline to express a view with respect to the approach discussed in *Stubbs*.

1:99CR107, 2001 WL 34563133, at *2 (W.D.N.C. June 20, 2001) ("Petitioner was convicted of conspiring to use and carry a firearm during bank robbery, in violation of 18 U.S.C. § 924(o), not § 924(c), and no mandatory minimum consecutive sentence is called for by that statute."). Section 924(o), instead of incorporating for the conspiracy the penalties for the primary offense, provides that "[a] person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years . . . and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life." This is in contrast to statutory provisions like 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the *same penalties* as those prescribed for the offense . . . .") (emphasis added). It was plainly erroneous to sentence Hohn according to the mandates of § 924(c) when he was convicted of violating § 924(o) instead of § 924(c). The error affected substantial rights because it subjected Hohn to a consecutive and mandatory sentence that is not mandated by the statute. Further, the error seriously affected the fairness, integrity, and public reputation of the judicial proceeding. Consequently, Hohn's sentence for the firearms conspiracy must be vacated and remanded for resentencing as well.

Finally, the government argues on cross-appeal that the district court improperly determined the drug quantity attributable to Hohn. We decline to address the government's cross-appeal in light of the remand. The government may raise the issue discussed in its cross-appeal before the district court during the resentencing proceedings.

**V.**

For the foregoing reasons, we vacate and remand this case with instructions to resentence

Hohn consistent with this opinion.  We affirm Hohn's convictions.